UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Citizens in Charge, Inc., *et al.*,

      Plaintiffs,

    v.                              Case No. 2:13–cv–935

Jon A. Husted,                  Judge Michael H. Watson
Ohio Secretary of State,

      Defendant.


Libertarian Party of Ohio, *et al.*,

      Plaintiffs,

    v.                              Case No. 2:13–cv–953

Jon A. Husted,                  Judge Michael H. Watson
Ohio Secretary of State,

      Defendant.

## OPINION AND ORDER
## AND PRELIMINARY INJUNCTION

Plaintiffs in these related cases assert claims under 42 U.S.C. § 1983,

challenging an Ohio statute that prohibits circulation of initiative petitions and

nominating petitions, other than a nominating petition for presidential electors, by

American citizens who are not residents of Ohio.[1]  *See* Ohio Rev. Code §

3503.06(C)(1)(a) (2013).  Specifically, Plaintiffs assert the statute violates their

---

[1]Although these cases are not consolidated, they are related inasmuch as they
present the same legal issue.

First Amendment right to engage in political speech.  Plaintiffs in both cases move the Court to preliminarily enjoin Defendant Ohio Secretary of State ("Secretary") from enforcing the law.  For the following reasons, the Court grants Plaintiffs' motions.

## I. BACKGROUND

The essential facts are undisputed.

### A.  The Parties

Three Plaintiffs brought Case No. 2:13–cv–935: Citizens in Charge, Inc. ("Citizens"); Ohioans for Workplace Freedom ("OWF"); and Cincinnati for Pension Reform ("CPR").  Citizens is an advocacy organization dedicated to expanding the initiative and referendum process.

CPR is an Ohio non-profit corporation registered as a ballot issue political action committee.  It is the sponsor of an initiative petition for a proposed amendment to the Charter of the City of Cincinnati to change the City's retirement system.  The proposed amendment will appeared on the November 2013 ballot. CPR claims that in addition to being denied its choice of non-resident petition circulators, it incurred extra costs because the challenged law required it to use only Ohio residents as circulators.

OWF is an Ohio non-profit corporation registered as a ballot issue political action committee.  OWF is currently in the process of collecting signatures on a petition for a proposed amendment to the Ohio Constitution known as the Ohio

Workplace Freedom Act which would permit Ohioans to choose whether to participate in a labor organization as a condition of employment. The petition would place the proposed amendment on the November 2014 ballot.

Four Plaintiffs brought Case No. 2:13–cv–953: the Libertarian Party of Ohio ("LPO"); Kevin Knedler; Aaron Harris; and Charlie Earl. LPO is a ballot-qualified political party in Ohio. LPO candidates have run for local, statewide, and federal offices since 2008. Keven Knedler is the Chair of the LPO Executive Committee. Aaron Harris is the Chair of the LPO Central Committee. Both Knedler and Harris are registered voters and intend to vote for LPO candidates in the May 2014 primary election. Charlie Earl seeks to run as the LPO candidate for Governor of Ohio in 2014. To do so, he must use circulators to collect signatures to support his nominating petition for Ohio's May 2014 primary. Nominating petitions for the primary are due on February 5, 2014.

Aside from CPR, Plaintiffs have or plan to use petition circulators who are not Ohio residents. Plaintiffs aver the challenged law prevents them from using the petition circulators of their choice, and will cause them to incur additional expense to hire Ohio residents to circulate their petitions.

Defendant Jon Husted is the Secretary of State for Ohio ("Secretary Husted"). As Secretary of State, he is also Ohio's chief elections officer under Ohio Revised Code § 3501.04 and therefore charged with the duty to enforce Ohio's election laws, including the challenged statute, Ohio Revised Code

§ 3503.06(C)(1)(a).  Plaintiffs in Case No. 2:13–cv–935 sue Secretary Husted in his individual and official capacities.  Plaintiffs in Case No. 2:13–cv–953 sue him in his official capacity only.  The Secretary does not oppose Plaintiffs' request for injunctive relief.  The remaining defendant is the State of Ohio ("State") which asks the Court to deny Plaintiffs' motions for preliminary injunctions.[2]

## B. Ohio Election Law

The Ohio Constitution reserves to the people the power to circulate initiative petitions.  Ohio Const. art. II, § 1.  The Ohio Constitution also provides for the use of petitions to nominate candidates for primary elections for state, district, and municipal offices.  Ohio Const. art. 5, § 7.

Chapter 35 of the Ohio Revised Code governs election procedures in Ohio, including procedures for circulating petitions.  The challenged law sets forth limitations on who may lawfully circulate petitions: "Except for a nominating petition for presidential electors, no person shall be entitled to circulate any petition unless the person is a resident of this state and is at least eighteen years of age."  Ohio Rev. Code § 3503.06(C)(1)(a) (2013).  The law went into effect on June 21, 2013.   Plaintiffs argue the residency requirement of § 3503.06(C)(1)(a) (2013) impermissibly infringes on their right to engage in political speech in violation of the First Amendment to the United States Constitution.

---

[2]The Court **GRANTS** the State's unopposed motions to intervene in these cases.

## C. Procedural History

Citizens, OWF, and CPR initiated their action on September 9, 2013 by filing a verified complaint seeking declaratory and injunctive relief, as well as damages. Those Plaintiffs concurrently filed a motion for a temporary restraining order and preliminary injunction to enjoin enforcement of the residency requirement for initiative petition circulators.

LPO, Knedler, Harris, and Earl filed their complaint on September 15, 2013. Those Plaintiffs filed a motion for preliminary injunction the next day, similarly requesting that the Court enjoin enforcement of the residency requirement for candidate petition circulators.

The two groups of Plaintiffs were apparently unaware of each others' lawsuits.

Pursuant to Southern District of Ohio Civil Rule 65.1(a), the Court conducted an informal conference on October 10, 2013. Counsel for all parties in both cases were present and participated in the conference. Counsel for the State also appeared. The parties offered somewhat different views as to whether an evidentiary hearing is necessary. In a Conference Memorandum and Order issued after the informal conference, the Court stated it viewed Plaintiffs' motions as presenting purely legal issues and was not yet convinced that an evidentiary hearing was necessary. The State has not challenged that observation and has not requested an evidentiary hearing in their subsequent filings.

The State also indicated at the conference that it might seek limited discovery in the form of document exchanges and taking the depositions of Plaintiffs' affiants.  There is no indication in the record of any disputes concerning discovery, and since the State has not offered the depositions of Plaintiffs' affiants in its responses, the Court assumes the State determined the depositions were not necessary.

The parties have timely filed their responses and replies in both cases, and Plaintiffs' requests for preliminary injunctive relief are ripe for decision.

## II.  STANDARD OF REVIEW

The Court considers and balances four factors when considering a motion for a preliminary injunction: "'(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *Williamson v. Recovery Ltd. Partnership*, — F.3d —, 2013 WL 5452469, at *17 (6th Cir. 2013) (quoting *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004)). The factors are not prerequisites to injunctive relief; rather, the Court must balance them to determine whether they weigh in favor of granting an injunction. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012).  The moving party bears the burden of justifying the issuance of an injunction, including showing likelihood of

success and irreparable harm.  *Id.*

## III.  DISCUSSION

### A.  Likelihood of Success

Plaintiffs argue they are likely to succeed on the merits of their claims that

Ohio Revised Code § 3503.06(C)(1)(a) violates their rights to engage in political

speech guaranteed by the First Amendment to the United States Constitution.  In

essence, they assert the statute fails under the Sixth Circuit's decision in *Nader v.*

*Blackwell*, 545 F.3d 459 (2008) which struck down the residency requirement of a

prior version of the statute.

The State advances four arguments which it says demonstrate Plaintiffs

cannot establish they are likely to succeed on the merits of their First Amendment

claims.  First, the State asserts *Nader* is distinguishable.  Second, even if *Nader*

applies, this Court should stay the matter until the U.S. Supreme Court issues a

ruling in *Judd v. Libertarian Party of Va.*, S. Ct. No. 13-231.  Third, the State

suggests the statute's residency requirement places only a minimal burden on the

referendum process.  Fourth, the State maintains Ohio Revised Code

§ 3503.06(C)(1)(a) survives strict scrutiny because it is narrowly tailored to serve

a compelling state interest.

The First Amendment provides: "Congress shall make no law . . .

abridging the freedom of speech."  U.S. Const. amend. I.  The First Amendment

applies to the States through the Fourteenth Amendment.  *Thornhill v. Alabama*,

310 U.S. 88, 95 (1940).

Plaintiffs correctly identify two controlling decisions that bear on the issue before this Court: *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999); and *Nader v. Blackwell*, 545 F.3d 459 (2008). *Buckley* considered a First Amendment challenge to a Colorado statute that placed several restrictions on initiative petition circulators. The U.S. Supreme Court reviewed three restrictions that the Tenth Circuit Court of Appeals struck down: (1) the requirement that initiative-petition circulators be registered to vote in Colorado; (2) the requirement that petition circulators wear badges bearing their names; and (3) the requirement that proponents of initiative petitions report the names and addresses of all paid circulators and the amount paid to each circulator.

The Supreme Court began its inquiry by recognizing the competing interests at stake. On the one hand, it reiterated that petition circulation is "'core political speech,' because it involves 'interactive communication concerning political change.'" *Buckley*, 525 U.S. at 186 (quoting *Meyer v. Grant*, 486 U.S. 414, 422 (1988)). "First Amendment protection for such interaction . . . is 'at its zenith.'" *Id*. at 187 (quoting *Meyer*, 486 U.S. at 425). On the other hand, the Court recognized Colorado's substantial interest in regulating elections. *Id*.; *see also id*. at 206–06 (acknowledging Colorado's significant interest in deterring fraud and diminishing corruption in the initiative process).

The registration requirement in *Buckley* is the restriction most closely

analogous to the residency requirement at issue in the instant case. In upholding

the Tenth Circuit's decision striking down that requirement, the Court observed

that aspect of the Colorado statute burdened political speech:

> The Tenth Circuit reasoned that the registration requirement placed on
> Colorado's voter-eligible population produces a speech diminution of
> the very kind produced by the ban on paid circulators at issue in *Meyer*.
> *See* 120 F.3d at 1100. We agree. The requirement that circulators be
> not merely voter eligible, but registered voters, it is scarcely debatable
> given the uncontested numbers, *see supra*, at 642–643, and n. 15,
> decreases the pool of potential circulators as certainly as that pool is
> decreased by the prohibition of payment to circulators. Both provisions
> "limi[t] the number of voices who will convey [the initiative proponents']
> message" and, consequently, cut down "the size of the audience
> [proponents] can reach." *Meyer*, 486 U.S., at 422, 423; *see Bernbeck
> v. Moore*, 126 F.3d 1114, 1116 (C.A. 8 1997) (quoting Meyer ); *see also
> Meyer*, 486 U.S., at 423 (stating, further, that the challenged restriction
> reduced the chances that initiative proponents would gather signatures
> sufficient in number to qualify for the ballot, and thus limited
> proponents' "ability to make the matter the focus of statewide
> discussion"). In this case, as in *Meyer*, the requirement "imposes a
> burden on political expression that the State has failed to justify." *Id.*, at
> 428.

*Id*. at 194–95. In addition, the Court found that Colorado could have employed

less drastic means to achieve its goal of protecting the integrity of the initiative

process:

> The State's dominant justification appears to be its strong interest in
> policing lawbreakers among petition circulators. Colorado seeks to
> ensure that circulators will be amenable to the Secretary of State's
> subpoena power, which in these matters does not extend beyond the
> State's borders. *See* Brief for Petitioner 32. The interest in reaching law
> violators, however, is served by the requirement, upheld below, that
> each circulator submit an affidavit setting out, among several

> particulars, the "address at which he or she resides, including the street
> name and number, the city or town, [and] the county." Colo.Rev.Stat.
> § 1–40–111(2) (1998); see supra, at 641, n. 7. This address attestation,
> we note, has an immediacy, and corresponding reliability, that a voter's
> registration may lack. The attestation is made at the time a petition
> section is submitted; a voter's registration may lack that currency.

*Id.* at 196.  Notably, however, the residence requirement of the Colorado statute

was not challenged in *Buckley*.  *Id.* at 197.

    *Nader* involved a challenge to both the registration and residency

requirements of a prior version of the statute at issue in the instant case, Ohio

Revised Code § 3503.06.  The former version of the statute provided as follows:

> No person shall be entitled to vote at any election, or to sign or circulate
> any declaration of candidacy or any nominating, initiative, referendum,
> or recall petition, unless the person is registered as an elector and will
> have resided in the county and precinct where the person is registered
> for at least thirty days at the time of the next election.

Ohio Rev. Code § 3503.06 (2004).  Hence, the only substantive difference

between the statute at issue in *Nader* and the statute challenged in the instant

case is that the current statute carves out an exception to the residency

requirement for nominating petitions for presidential electors.  *See* Ohio Rev.

Code § 3503.06(C)(1)(a) (2013).

    The plaintiff, Ralph Nader, ran for President of the United States in 2004.

To appear on the general ballot, Ohio law required him to obtain 5000 valid

signatures on his nominating petition.  After Nader's petition was challenged, the

Secretary of State conducted a hearing and concluded that Nader lacked 5000

valid signatures, in part, because he had used petition circulators who were not registered to vote in Ohio and who were not residents of Ohio.

In October 2004, Nader filed an action in this Court seeking a temporary restraining order barring the Secretary of State from removing Nader's name from the ballot. Judge Edmond Sargus denied the motion and dismissed the case on the ground that some of Nader's circulators had engaged in actual fraud. Nader eventually appealed the dismissal, but the Sixth Circuit Court of Appeals dismissed the appeal, holding that Nader's claims for injunctive and declaratory relief were moot.

Nader filed a second action in this Court in 2006, asserting a claim for damages against the Ohio Secretary of State in his individual capacity for alleged violation of his rights secured by the First and Fourteenth Amendments. The Court dismissed the action on three grounds: (1) Nader failed to satisfy the requirements of Article III standing; (2) the Secretary of State was entitled to qualified immunity; and (3) the Secretary of State was entitled to absolute immunity because the hearing on the validity of the signatures was judicial in nature.

The Sixth Circuit affirmed. *Nader*, 545 F.3d at 478. In doing so, the court reached three conclusions:

> First, we hold that Nader has standing to challenge the constitutionality of the voter-registration and residency requirements contained in Ohio Rev.Code § 3503.06. Accordingly, we consider the merits of Nader's

constitutional claims. We hold that the voter-registration requirement contained in Ohio Rev. Code § 3503.06 is a severe restriction on political speech which cannot survive strict scrutiny. Similarly, we hold that the residency restriction in § 3503.06 severely limits political speech and is not justified by a sufficient state interest. Therefore, we hold that the voter-registration restriction and the residency restriction contained in § 3503.06 are both unconstitutional in violation of the First Amendment. Finally, we conclude that because these violations were not clearly established in 2004, Blackwell is entitled to qualified immunity.

*Id*. at 478 (concurring opinion by Moore, J).[3]

Judge Boggs indicated that because of the unusual procedural posture of

the case, the court did not have before it evidence or arguments as to whether

the law was narrowly tailored to achieve a compelling state interest. *Id*. at 475.

That was so because the Secretary of State neglected to address that issue,

instead relying solely on the argument that some of Nader's circulators engaged

in fraud. *See id*. n.10. Nonetheless, Judge Boggs concluded *Buckley*'s ruling on

the registration requirement for initiative petition circulators extended to

circulators of candidate petitions. *Id*. After determining the registration

---

[3]The *Nader* decision consists of three separate opinions. Judge Boggs wrote a detailed lead opinion. Judges Moore and Clay wrote separate opinions in which they concurred in part with Judge Boggs' opinion and concurred in judgment. Judges Moore and Clay also concurred in each others' opinions, making those opinions the majority opinion of the court. All three judges agreed the residency requirement of Ohio Revised Code § 3503.06 violated the First Amendment. *See Nader*, 545 F.3d at 475–77 (Boggs, J.), 478 (Moore, J.), and 479 (Clay, J.). Judges Moore and Clay did not disagree with Judge Boggs' analysis of the First Amendment issue. Rather, they disagreed with Judge Boggs to the extent he appeared to suggest the precedential value of the ruling on the statute's constitutionality was limited because Nader sought only damages in his second lawsuit and did not bring a "direct" constitutional challenge to the statute. *See id*. at 478.

requirement failed strict scrutiny under *Buckley*, Judge Boggs reasoned the

residency requirement also violated the First Amendment:

> Looking then to the residency requirements, which would be implicated to the extent that circulators had not registered to vote and were not residents of Ohio, we see little reason to uphold the exclusion of such persons from the ranks of circulators. The interest in permitting greater amounts of speech is the same. No case has been put forward in this litigation as to a compelling state interest in permitting unregistered Ohioans to circulate petitions but not unregistered citizens of other states. Thus, we hold that the enforcement of the residence requirement as well violated Nader's constitutional rights.

*Id*. at 476.

Writing for the majority, Judge Clay clarified the precedential effect of the

court's ruling:

> First, the lead opinion states that "[t]his suit is a civil action for money damages against Blackwell in his personal capacity. It is not another chance for Nader to litigate the constitutionality of § 3503.06, the constitutionality of which is being challenged directly in other cases." Lead Op. at 9. The lead opinion does nothing, however, to explain why the fact that Nader currently seeks only money damages somehow diminishes the implications of our holding that Ohio Revised Code § 3503.06 treads too far on constitutionally protected activity. As we correctly hold, "petition circulation activity constitutes core political speech, and any regulation of that speech is subject to exacting scrutiny." Lead Op. at 13. The fact that we reach this holding in resolving a particular plaintiff's claim for money damages does not diminish its applicability to all future cases, and judges bound by the Sixth Circuit's decisions must treat *Nader v. Blackwell* as they would any other published opinion of this Court.
>
> Moreover, regardless of whether or not Nader has "directly" challenged the constitutionality of § 3503.06, Nader does raise a First Amendment challenge, and First Amendment challenges are governed by the overbreadth doctrine. Under that doctrine, a First Amendment plaintiff "may prevail on a facial attack by demonstrating there is 'a realistic

danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.'" *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 135 (6th Cir. 1994) (quoting *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984)). Thus, upon our declaration that portions of § 3503.06 are unconstitutional as applied to Ralph Nader, any subsequent plaintiff who challenges the same provisions may prevail, even if the statute is not unconstitutional as applied to them. In other words, our decision that § 3503.06 is unconstitutional as applied to Ralph Nader has the same practical effect as a declaration that the portions of § 3503.06 which Nader challenges are facially unconstitutional, because any future litigant who raises a First Amendment challenge to the provisions challenged by Nader may prevail by noting that § 3503.06 "significantly compromise[s]" the recognized First Amendment rights of Ralph Nader. *Id.* Nothing in this Court's holding should be understood to abrogate the overbreadth doctrine.

*Id.* at 478–79.

Other circuits have reached similar conclusions and overturned residency requirements placed on petition circulaters. *See Libertarian Party of Va. v. Judd*, 718 F.3d 308 (4th Cir. 2013) (holding Virginia's preclusion of nonresident nominating petition circulators violated the First Amendment); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) (invalidating Arizona law barring nonresident candidate petition circulators); *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023 (10th Cir. 2008) (striking down Oklahoma residency requirement for circulators of initiative petitions); *Chandler v. City of Arvada, Colorado*, 292 F.3d 1236 (10th Cir. 2002) (overturning municipality's residency requirement for initiative petition circulators); *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000) (invalidating Illinois law limiting candidate petition circulators to registered voters of the relevant

political subdivision). The Eighth Circuit, however, upheld a North Dakota law precluding nonresident initiative petition circulators, opining it did not unduly restrict speech. *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 616 (8th Cir. 2001).

Unlike *Nader*, the courts in other circuits discussed at length whether the residency requirements were narrowly tailored to serve compelling state interests. In *Judd*, for example, the court identified that issue as the crux of the case. 718 F.3d at 317. In determining the residency requirement before it was not narrowly tailored, the court in *Judd* recognized "'[f]ederal courts have generally looked with favor on requiring petition circulators to agree to submit to jurisdiction for purposes of subpoena enforcement, and the courts have viewed such a system to be a more narrowly tailored means than a residency requirement to achieve the same result.'" *Id*. at 318 (quoting *Brewer*, 531 F.3d at 1037). "More recently, in *Savage*, the Tenth Circuit reiterated that 'requiring non-residents to sign agreements providing their contact information and swearing to return in the event of a protest is a more narrowly tailored option.'" *Id*.

Several important principles flow from the Sixth Circuit's decision in *Nader* and the decisions of other circuits that have struck down residency requirements for petition circulators. First, consistent with *Buckley*, petition circulation—whether for candidates or initiatives—constitutes core political speech protected by the First Amendment. Second, laws prohibiting

nonresidents from acting as petition circulators significantly burden political
speech because they substantially reduce the number of potential circulators and
are therefore subject to strict scrutiny. Thus, to be upheld, the state must show
the restriction is narrowly drawn to serve a compelling state interest. Third,
States have a compelling interest in preventing fraud in the election process.
Fourth, notwithstanding the States' compelling interest, residency requirements
do not survive strict scrutiny because less restrictive means are available to
effectively combat fraud, namely, a requirement that nonresident circulators
provide their contact information and swear to return if the petition is challenged,
or otherwise agree to submit to the jurisdiction of the state.

### 1. *Nader* Controls the Instant Case

Having surveyed the law, the Court will turn to the State's arguments. The
State first argues *Nader* is distinguishable from the instant case. The State
suggests that *Nader* concerned only the voter registration requirement for
circulators of a candidate for President of the United States. In addition, the State
maintains the holding of *Nader* is limited because, as Judge Boggs indicated, he
did not have before him the usual evidence and arguments as to whether the
statute was narrowly tailored to achieve a compelling state interest. *See Nader*,
545 F.3d at 475–76.

As noted above, the only difference between the statute *Nader* struck down
and the statute at issue here is that the current version of the statute provides an

exception to the residency requirement for circulators of nominating petitions for presidential electors. *See* Ohio Rev. Code § 3603.06(C)(1)(a). There is little reason to believe the exception makes any difference. None of the three opinions placed any particular significance on the fact that Nader was running for President of the United States as opposed to some other public office. Moreover, the majority in *Nader* placed no limitation on its holding that the residency requirement of § 3503.06 was unconstitutional. Judge Boggs relied heavily on *Buckley*, which involved initiative petition circulators, and Judges Moore and Clay did not dispute that reliance. Notably, *Buckley* recognized that "[i]nitiative-petition circulators also resemble candidate petition signature gatherers, however, for both seek ballot access." 525 U.S. at 191. For these reasons, it is reasonable to conclude the holding in *Nader* applies to initiative petition circulators as well. In sum, the exception carved out for nominating petitions for presidential electors does not serve as a meritorious basis to distinguish *Nader*.

The State also suggests *Nader* is distinguishable because the prior statute "restricted the use of petition circulators who were not themselves *registered* Ohio voters . . . ." Mem. Contra 4, ECF No. 11 in Case No. 2:13–cv–935, Mem. Contra 4, ECF No. 14 in Case No. 2:13–cv–953 (emphasis in originals). The argument seems to imply that either the *Nader* court did not reach the constitutionality of the residency requirement or that its discussion of that issue is *dicta*. The State's argument fails, however, because the Court in *Nader* expressly reached the issue

of whether the statute's residency requirement was constitutional and unmistakably held the requirement violated the First Amendment, separate and apart from the voter registration requirement:

> We hold that the voter-registration requirement contained in Ohio Rev.Code § 3503.06 is a severe restriction on political speech which cannot survive strict scrutiny. Similarly, we hold that the residency restriction in § 3503.06 severely limits political speech and is not justified by a sufficient state interest. Therefore, we hold that the voter-registration restriction and the residency restriction contained in § 3503.06 are both unconstitutional in violation of the First Amendment.

545 F.3d at 478 (Moore, J., writing for the majority).

In addition, the State asserts the court in *Nader* did not consider the evidence or arguments as to whether the statute was narrowly tailored to serve a compelling state interest. Judge Boggs stated the Secretary of State did not address those components of the strict scrutiny test. Nonetheless, Judge Moore's majority opinion indicates she was applying strict scrutiny, and the residency requirement failed that test because it was "not justified by a sufficient state interest." *Id.* at 478. That statement shows the majority did, in fact, consider the entire strict scrutiny analysis, as it must have done in order to hold the residency requirement violated the First Amendment. *See also id.* (stating the voter registration requirement could not survive strict scrutiny and indicating the residency requirement "similarly" failed).

The lack of a detailed discussion of the strict scrutiny test is not a basis to distinguish or diminish *Nader*. Writing for the majority, Judge Clay made it clear

that *Nader* binds this Court. 525 F.3d at 479.

As previously stated, the residency requirement of the current statute differs from the prior version that was struck down in only one respect: the current statute allows nonresidents to circulate nominating petitions for those who seek the office of President of the United States. That sole distinction does not render *Nader*'s holding inapplicable to the residency requirement of Ohio Revised Code § 3503.06(C)(1)(a). Stated otherwise, the current statute is materially indistinguishable from the statute *Nader* struck down as violating Nader's First Amendment right to engage in political speech. For that reason alone, the Court concludes Plaintiffs are likely to succeed on the merits.

### 2. The Challenged Statute is Subject to Strict Scrutiny

The State next argues the statute is not subject to strict scrutiny in the first place. Specifically, the State maintains the residency requirement places only a minimal burden on speech and is therefore subject to a less demanding level of scrutiny.

The State relies on two decisions in support of that proposition. First, the State argues the Court should apply the flexible, interest-balancing test used in *Doe v. Reed*, 130 S.Ct. 2811 (2010). *Doe* involved a First Amendment challenge to Washington's public records law under which referendum petitions, and hence the identities and addresses of signatories, were made available upon request. The signatories who brought the action had signed a petition to place a

referendum on the ballot concerning the extension of benefits to same-sex couples. They brought two counts in their complaint: Count I asserted the law was unconstitutional on its face; Count II contended the law was unconstitutional as applied to the signatories who brought the action. The district court issued a preliminary injunction solely on the basis of Count I. The Ninth Circuit reversed, also considering only Count I. Consequently, the U.S. Supreme Court in *Doe* examined only the facial challenge to the public records disclosure law.

*Doe* is inapposite. First, it involved disclosure. As the Court emphasized, the disclosure requirement did not directly limit speech, and accordingly the Court analyzed the matter in accordance with prior case law involving disclosure. *Doe*, 130 S.Ct. at 2818. In addition, the State erroneously relies on the *Doe* Court's observation that the disclosure requirement was nondiscriminatory. Unlike the disclosure requirement at issue in *Doe*, the residency requirement of Ohio Revised Code § 3503.06(C)(1)(a) is discriminatory on its face: it directly discriminates against out-of-state petition circulators in favor of resident circulators. Furthermore, *Doe* considered only a *facial* challenge to the public records law. Here, in contrast, the Court may consider Plaintiffs' facial *and* as applied challenges. As to the Plaintiffs' facial challenge, the majority in *Nader* stated that pursuant to the underbreadth doctrine, its decision had the "same practical effect as a declaration that the portions of § 3503.06 which Nader challenges [i.e. the voter registration and residency requirements] are facially

unconstitutional . . . ."  545 F.3d at 479.  In short, *Doe* does not help the State.

Second, the State relies on the decision of the Eighth Circuit in *Jaeger*. *Jaeger* stands alone.  Every other circuit that has addressed the issue has held the residency requirements at issue were subject to strict scrutiny and failed to pass that test.  More significantly, the holding in *Jaeger* is contrary to the decision of the Sixth Circuit in *Nader* which binds this Court.  Thus, the State's reliance on *Jaeger* is misplaced.

Third, in an apparent attempt to challenge Plaintiffs' as-applied claim, the State asserts the residency requirement places only a minimal burden on Plaintiffs' political speech.  The State argues, for example, that Plaintiffs could still hire out of state circulators but then pair them with Ohio residents who could lawfully act as witnesses.

Plaintiffs have adduced evidence which indicates that the residency requirement significantly increases the cost of obtaining valid signatures in a variety of ways.  For example, hiring only in-state circulators increases costs because of the money that must be spent on advertising for circulators and training them.  Jacob Aff. ¶ 13, ECF No. 12-1, Case No. 2:13–cv–935.  Moreover, professional, nonresident circulators have a greater incentive to do the job right, and therefore, they tend to obtain a higher percentage of valid signatures.  *Id*. ¶¶ 21, 22.  As Plaintiffs note, their costs would increase significantly if they were to follow the State's suggestion and hire Ohio resident witnesses to work alongside

Ohio out of state circulators. Furthermore, aside from increasing costs, the residency requirement substantially reduces the pool of available circulators. In addition, Plaintiffs' assertion that the residency requirement substantially burdens their ability to engage in political speech finds support in *Nader* and *Buckley*, not to mention a majority of circuit courts that have considered the issue.

In sum, as the majority in *Nader* held, the residency requirement "severely limits political speech." 545 F.3d at 478. Accordingly, the Court rejects the State's argument that a less demanding level of scrutiny applies to the residency requirement of Ohio Revised Code § 3503.06(C)(1)(a).

### 3. The Challenged Statute Is Not Narrowly Tailored

The State also maintains the residency requirement passes strict scrutiny. It argues it has a compelling interest in preventing fraud, ensuring that witnesses to petition signatures are subject to the State's subpoena power, preventing the petition process from being taken over by out-of-state special interest groups, and ensuring that petitions have grass roots support of Ohioans.

The first two interests are related. As recognized by several courts, the State undoubtedly has a compelling interest in preventing fraud in the petition process. Its interest in being able to subpoena circulators is arguably furthered by the residency requirement. The issue, however, is whether the State could use other, less restrictive means to achieve the same goal. If it could, the statute is not narrowly tailored for the purposes of strict scrutiny analysis.

Citing decisions by the Tenth and Ninth Circuits, the Fourth Circuit in *Judd* identified two less restrictive ways to address the states' interest in preventing fraud. First, "'[f]ederal courts have generally looked with favor on requiring petition circulators to agree to submit to jurisdiction for purposes of subpoena enforcement, and the courts have viewed such a system to be a more narrowly tailored means than a residency requirement to achieve the same result.'" *Judd*, 718 F.3d at 318 (quoting *Brewer*, 531 F.3d at 1037). Second, "[m]ore recently, in *Savage*, the Tenth Circuit reiterated that 'requiring non-residents to sign agreements providing their contact information and swearing to return in the event of a protest is a more narrowly tailored option.'" *Id.* There is no indication these two alternatives would not also work for Ohio. Consequently, the Court concludes the residency requirement is not narrowly tailored because less restrictive means are available to address the State's interest in preventing election fraud.

### 4. A Stay Is Not Warranted

Lastly, the State argues the Court should stay this case until the U.S. Supreme Court issues a ruling in *Judd v. Libertarian Party of Va.*, S. Ct. No. 13-231. The State maintains that a circuit split exists on the dispositive issue, and the U.S. Supreme Court might overrule the leading decision by the Sixth Circuit on the subject, *Nader v. Blackwell*, 545 F.3d 459 (2008). Plaintiffs contend that the Supreme Court likely will not issue any decision in *Judd* until after the

elections at issue take place. They also assert that delaying a decision in the

instant case will result in irreparable harm in the form of a substantial burden of

their First Amendment rights to engage in core political speech.

> The Supreme Court has held that "the power to stay proceedings is
> incidental to the power inherent in every court to control the disposition
> of the causes in its docket with economy of time and effort for itself, for
> counsel and for litigants." *Landis v. North American Co.*, 299 U.S. 248,
> 254–55 (1936). The exercise of such authority is within the court's
> discretion. *Ohio Envtl. Council v. United States Dist. Ct.*, 565 F.2d 393,
> 396 (6th Cir. 1977). The party seeking the stay must demonstrate "that
> there is pressing need for delay, and that neither the other party nor the
> public will suffer harm from entry of the order." *Ohio Envtl. Council*, 565
> F.2d at 396.

> A court considering a motion to stay should weigh the following factors:
> "[1] the potentiality of another case having a dispositive effect on the
> case to be stayed, [2] the judicial economy to be saved by waiting on
> a dispositive decision, [3] the public welfare, and [4] the
> hardship/prejudice to the party opposing the stay, given its duration."
> *Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (2004) (citing *Landis*, 299
> U.S. at 255).

*City of Youngstown v. Corrections Corp. of Am.*, No. 4:12–cv–2723, 2013 WL

1303832 at *2 (N.D. Ohio Mar. 28, 2013). The *Judd* petition could potentially

have a dispositive effect on this case. Nevertheless, the degree of that potential

is speculative at this point because the Court has not yet granted certiorari.

Judicial economy might well be served by waiting for the outcome of *Judd*. The

Court finds the public welfare, though, is best served by protecting the First

Amendment rights of the Plaintiffs and others similarly situated, especially given

the State has available other less restrictive methods of addressing election

fraud.  The potential hardship on Plaintiffs is great: if *Judd* is upheld, they might

suffer irreparable harm to their First Amendment rights.  The Court finds the

balance of the factors weighs against staying this matter pending the outcome of

*Judd*.

For the above reasons, the Court holds that Plaintiffs are likely to succeed

on the merits of their claim that Ohio Revised Code § 3503.06(C)(1)(a) violates

the First Amendment because it substantially burdens core political speech and is

not narrowly tailored to serve Ohio's compelling interest in curbing fraud in the

election process.

## B.  Irreparable Harm

Plaintiffs assert violation of their First Amendment rights constitutes

irreparable harm.  In response, the State essentially rehashes arguments it made

in asserting that the residency requirement places only a minimal burden on

Plaintiffs' core political speech.  Specifically, it suggests Plaintiffs may still use

nonresident circulators paired with Ohio witnesses.

Plaintiffs are correct.  It is well established that even a temporary violation

of First Amendment rights constitutes irreparable harm.  *Elrod v. Burns*, 427 U.S.

347, 373 (1976).  This factor weighs in favor of granting a preliminary injunction.

## C.  Harm to Others

Plaintiffs argue an injunction would not cause harm to others.  The State

argues it will suffer harm if the Court takes away the Ohio General Assembly's

prerogative to regulate petition circulation.

The Court respects the Ohio legislature's prerogative. Nonetheless, that prerogative does not permit the enactment of legislation that violates the U.S. Constitution as interpreted by the U.S. Supreme Court and the Sixth Circuit Court of Appeals. The Court does not detect harm to the State or others.

## D. Public Interest

Plaintiffs contend the protection of First Amendment rights serves the interests of the public. The State argues, without explaining, that the public interest favors preserving the *status quo* because that is the traditional purpose of a preliminary injunction.

The Court agrees with Plaintiffs that the public benefits from the enforcement of fundamental First Amendment rights. Accordingly, the Court finds this factor weighs in favor of granting an injunction.

## E. Balancing the Factors

All of the factors weigh in favor of granting a preliminary injunction. In particular, Plaintiffs have shown a substantial likelihood of success on the merits in light of *Nader* and a majority of decisions from other circuits. Moreover, irreparable harm in the form of the violation of First Amendment freedoms is a compelling factor. Consequently, the Court will issue an injunction.

## IV.  DISPOSITION

Based on the above, the Court **GRANTS** Plaintiffs' motions for a preliminary injunction.  Accordingly, the Court **PRELIMINARILY ENJOINS** Defendants from enforcing the residency requirement for circulators of petitions for candidates and initiatives set forth in Ohio Revised Code § 3503.06(C)(1)(a). As noted above, the Court also **GRANTS** the State's motions to intervene in these cases.

Plaintiffs ask the Court to waive security.  The Court finds this case is appropriate for such a waiver and **GRANTS** Plaintiffs' motion.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**